POSTAL TELEGRAPH & CABLE CO. *v.* SAGER.*

(Division A. Oct. 28, 1924. Suggestion of Error Overruled Feb. 16, 1925.)

[102 So. 835.  No. 24637.]

TELEGRAPHS AND TELEPHONES. *Falsity of service message as to residence of addressee held not actionable.*

Where a telegram was not delivered on account of the absence of the addressee from home, and a service message containing a false statement as to the residence of the addressee was sent to the forwarding office, an action for damages cannot be based upon the falsity of this service message if the sender of the original message was not misled thereby.

¹Headnote. Telephones and Telegraphs, 37 Cyc., pp. 1740, 1754.

APPEAL from chancery court of Adams county.

HON. R. W. CUTRER, Chancellor.

Suit by Mrs. Sadie K. Sager against the Postal Telegraph & Cable Company. From decree for plaintiff, defendant appeals. Reversed, and rendered.

*Ratcliff & Kennedy,* for appellant.

Appellant was neither negligent in the handling of the message nor was the service message misleading, nor did it actually mislead Mr. Mulvihill, nor cause any damage. It is admitted that Mrs. Sager was not in Port Gibson; it necessarily follows that the message could not have been delivered. There is no evidence or

intimation that the agent was unfriendly or did anything wilfully, but, on the contrary, shows that he exerted every effort to deliver the message; nor does the evidence intimate that the service message was sent through malice or to mislead. The transmission of the service message and to the effect that Mrs. Sager had left Port Gibson over two years ago, did not mislead Mr. Mulvihill and prevent him from recommending Mrs. Sager. Mr. Mulvihill did not abandon the recommendation of Mrs. Sager because he thought she had left Port Gibson—he knew she lived in Port Gibson—but he abandoned the recommendation of her because it was a case of emergency and Mrs. Sager could not be located.

The court will take judicial cognizance of the fact that a person is not the only one who knows his own name. Again, Mrs. Sager did not pretend to take the examination to secure the position. It therefore follows that the service message did not mislead Mr. Mulvihill.

In the case of *Western Union* v. *Garrett,* 46 Tex. 130, 102 S. W. 456, a service message announcing non-delivery of a telegram, stated: ''Party said to be out of the city.'' Damages were claimed on the ground that the message was misleading. Upon the trial of the case it developed the sender of the message knew that the addressee was a railroad engineer, was absent on his daily run and that the sender could not claim that the service message misled him and prevented him from sending another message giving a more specific address.

The damages allowed by the decree of the court are too remote, contingent and speculative. The message was not one offering employment or by one who was authorized to close a contract, but was merely an offer of recommendation for a political appointment. If Mr. Mulvihill had recommended the lady, he could not have given her the appointment; on the contrary, it would have been necessary for the Postmaster General to have acted in the matter of making the appointment.

The Mississippi courts have denied damages dependent upon such contingencies in the following cases: *Western Union* v. *Clifton,* 8 So. 746; *Jacobs* v. *Postal,* 24 So. 535; *Western Union* v. *Webb,* 48 So. 401; *Western* v. *Adams,* 47 So. 412; *Johnson* v. *Western Union,* 29 So. 787.

The following Mississippi cases support the proposition that loss of opportunity to obtain employment is too uncertain and speculative to afford recovery: *Western* v. *Pallots,* 37 So. 310; *Johnson* v. *Western Union, supra.*

The case should be reversed and dismissed.

*Engle & Laub,* for appellee.

The agent of appellant must have known what the effect of his service message would be. He must have intended that his message would have the effect and result which followed. The evidence shows that he had known the appellee all of her life; that he knew she had a home and a residence at Port Gibson; and that she had received telegrams at Port Gibson within the two years previous to June, 1921.

In order to report that the message had not been delivered, it was not necessary for the agent to go out of his way and make the statement that appellee did not live there and had left more than two years previously. This statement was entirely unnecessary. It was a statement that was not true. The agent knew at the time he incorporated this statement in his service message that he was making a statement that was not true.

Had it been a question only of getting the proper name of appellee, Mr. Mulvihill could have wired to her relatives whom he knew at Vicksburg. But when he got this service message stating that she did not live at Port Gibson and had left there more than two years ago, he saw at once that she was disqualified for the appointment, and he then sought the name of another

person to submit. He obtained the name of another party and submitted same, and this party was promptly appointed as acting Postmaster.

There is a direct causal connection between the false statement in the service message and the failure of appellee to get the temporary appointment. The agent of appellant went out of his way in wording the service message and we are led logically and clearly to the conclusion that the service message was purposely worded so as to disqualify appellee. We, therefore, have a case of the appellant designedly imparting false information for the purpose of injuring the appellee.

We agree with the learned Chancellor that appellee had no right to recover for the full term because we could not show that she could have qualified on examination which is required for a full term appointment. It is manifest, however, that the direct and logical result of the false information sent out by the appellant, and in due course of procedure transmitted to Mr. Mulvihill, caused the appellee to lose the salary from the time of the temporary appointment to the time of the permanent appointment, a period of time found by the court to be five months.

The law of this case is very simple. A person is presumed to intend the natural and probable consequence of his own act. A person making a false statement regarding another, which statement results in injury to the other, is answerable in damages; and if the false statement is made designedly for the purpose of bringing a certain injury or damage to another, the liability is all the more pronounced.

Appellant was not sued for failure to deliver telegrams or failure to properly transmit a telegram, but was sued because it made this false statement and because immediately upon the heels of this false statement the injury to the appellee resulted.

On the facts of this case, the finding of the Chancellor was eminently proper and should be upheld.

Argued orally by *L. T. Kennedy,* for appellant, and *Charles F. Engle,* for appellee.

COOK, J., delivered the opinion of the court.

This is a proceeding by attachment in chancery instituted by the appellee, Mrs. Sadie K. Sager, against the appellant, the Postal Telegraph & Cable Company, a nonresident corporation, and the Bank of Commerce of Natchez, Miss., which was alleged to be indebted to the appellant. The bill of complaint alleged that the complainant was an applicant for the position of postmistress at Port Gibson, Miss., an office paying a salary of two thousand two hundred dollars per year; that M. J. Mulvihill, of Vicksburg, Miss., was the Republican National Committeeman for the State of Mississippi, and that he had promised to recommend the complainant for appointment to said position; that on June 14, 1921, he sent a telegram from Washington, D. C., to the complainant at Port Gibson, Miss., reading as follows:

"Telegraph your full given name so I can present same to the P. O. Department with my recommendation. Care of New Ebbitt Hotel. Very urgent."

That the complainant then had a home at Port Gibson, but on the date of the sending of this telegram, she was temporarily absent at Vicksburg, Miss.; that the said telegram was transmitted over the lines of the appellant and was received at its local office at Port Gibson on the day it was sent, but that the appellant company made no effort to locate the complainant or to deliver the message; that the appellant disclosed to third parties the contents of the telegram, and sent a service message to M. J. Mulvihill at Washington stating that the complainant had removed from Port Gibson more than two years before that time; that this statement contained in this service message was false and known to be so by the appellant at the time and was intended to injure the complainant by preventing her from being appointed;

that upon being advised by the appellant that the complainant was no longer a resident of Port Gibson and had not resided there for two years, Mulvihill recommended another for the appointment, and the party so recommended was appointed as acting postmistress, and afterwards was appointed for a full term of four years. The bill further averred that the complainant would have received the appointment as acting postmistress, and also as postmistress for a full term, if the appellant had made proper effort to deliver the telegram, and had not violated its obligation and duty by disclosing to third parties the contents of the message, or had not sent to Mulvihill the service message containing the erroneous and false statement that the complainant had moved from Port Gibson over two years previous to that date. The prayer of the bill was for a decree awarding her as damages the amount of the salary of the office for a full term of four years, aggregating eight thousand eight hundred dollars, and for general relief. Upon the proof the chancellor denied recovery for any part of the salary that would have been earned during the regular term of four years, but awarded a recovery for the sum of nine hundred forty six dollars and sixty-five cents, being the aggregate amount of salary paid to the acting postmistress under the temporary appointment.

It is admitted that the appellant was not at Port Gibson when this telegram was received there, and consequently that the telegram could not have been delivered to her at that place. For this reason the testimony offered by the appellant to show the effort made by it to deliver the message is not here material. There was no testimony whatever that the contents of the message were disclosed to third parties, and the appellee seeks to uphold the decree of the chancellor solely upon the alleged falsity of the service message. This service message was sent by the appellant to the Western Union Telegraph Company, at Jackson, Miss.,

and by it transmitted to Washington. This message as delivered to Mulvihill read, in part, as follows:

"The tolls on your telegram of June 14 to Mrs. G. H. Sager, Port Gibson, Mississippi, were not paid at destination, the reason being given that addressee left city over two years ago. Please pay amount seventy two dollars and ten cents to the bearer; or if you have an account with us we will charge the tolls to you."

Mr. Mulvihill, a witness for the complainant, testified that he received a letter from the Post Office Department advising him that the postmaster at Port Gibson would be removed, and requesting him to submit the name of some competent person for appointment as acting postmaster; that he immediately sent the telegram to the complainant; that he understood that the notice from the Post Office Department called for immediate action, and when he was advised that Mrs. Sager could not be located at Port Gibson, he at once secured the name of another competent person and submitted it to the Department. He further testified as follows:

"Q. You say you received a service message that Mrs. Sager had left Port Gibson over two years ago? A. Yes, sir. Q. Where did you know that she lived? A. In Port Gibson. Q. You knew that when you made your recommendation to have her appointed? When you sent the telegram to have her appointed you knew she lived in Port Gibson? A. I knew her home was there. Q. You knew her personally? A. Yes, sir. Q. Did you know her family? A. Well, I knew some of them. Q. Would you say now that at that time she lived in Port Gibson? A. You would have to get that from somebody else. Q. I mean, will you say now that at that time she lived in Port Gibson? A. Yes, sir; or else I would not have asked her full name to recommend her. Q. Have you got any information since as to her residence? A. No, sir."

The testimony further shows that Mr. Mulvihill was well acquainted with relatives of the complainant who

resided in the city of Vicksburg, and one of whom he had appointed to a clerkship in the postoffice there, and that he did not communicate with any of these relatives for the purpose of securing the given name of the complainant, and also that the complainant never took the civil service examination necessary to qualify her for appointment to the regular postmastership.

Conceding the falsity of the statement in the service message that the complainant had moved from Port Gibson more than two years before that time, it is clear that the Republican National Committeeman was not misled thereby. The testimony does not sustain the contention that he was thereby led to believe that the complainant was disqualified on account of residence to hold the office, and consequently abandoned his purpose to recommend her for appointment thereto; but, on the contrary, we think it clearly appears that he knew she was a resident of the municipality in question, and that he abandoned his purpose to recommend her on account of the fact that he was confronted with an emergency and could not at once locate her. If the erroneous statement in the service message did not mislead the sender of the original message, the loss, if any, sustained by the complainant was not attributable to such message, and consequently the decree of the court below should have been in favor of the appellant.

The decree will therefore be reversed, and a decree entered here for appellant.

*Reversed and decree for appellant.*